Monica QUELJOE; Johnny Sunarso Darmawan, Petitioners

v.

ATTORNEY GENERAL OF the UNITED STATES, Respondent.

No. 07–1145.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) April 14, 2008.

Filed: April 14, 2008.

---

Elizabeth C. Surin, Morley, Surin & Griffin, Philadelphia, PA, for Petitioners.

Richard M. Evans, Emily A. Radford, Aviva L. Poczter, Christopher P. McGreal, Brooke M. Maurer, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER, JORDAN, and ALARCÓN,* Circuit Judges.

## OPINION

SLOVITER, Circuit Judge.

Monica Queljoe, the principal applicant, and her husband, Johnny Sunarso Darmawan (collectively "Petitioners"), petition for review of a final order of the Board of Immigration Appeals ("BIA"), that affirmed, without opinion, the decision of the Immigration Judge ("IJ") denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The IJ denied Queljoe's requests for asylum, withholding of removal, and protection under the CAT. The IJ granted voluntary departure within sixty days. We will deny the petition for review.

### I.

Petitioners are Indonesian citizens of Chinese ethnicity who overstayed their authorized time in this country. They sought asylum, withholding of removal, and protection under the CAT. We discern from Petitioner's brief and Queljoe's testimony at a hearing before the IJ that she asserts a claim of discrimination as a Chinese Christian during her life in Indonesia and past persecution in Indonesia as a result of witnessing the May 1998 riots. She presented no evidence of government discrimination. In her affidavit, Queljoe stated that "[a]s a Chinese descent and a Christian, I have experienced the discriminations and hatred from the native people in Indonesia." App. at 376. She referred to difficulties experienced by "[m]ost of the Chinese people ... whenever they apply for necessary documents in the government offices" and that they "must pay a much higher fee than it is required for the native Indonesian people." App. at 376. She also referred to slurs and remarks by native Indonesians on the street. She offered no testimony of any discrimination that she experienced or that was directed at her or her husband. She has not made a viable claim of ethnic or religious discrimination.

### II.

Queljoe's principal claim to asylum is based on her assertion that she has a well-founded fear of future persecution because the 1998 riots and subsequent bombings, most of which occurred in regions other than where she lived, have caused her fear.

Queljoe does not allege that she suffered any actual harm. Although she describes her witnessing the May 1998 riots as harm, we reject that contention. Witnessing the 1998 riots and simple awareness of bombings and other violent incidents that occurred throughout Indonesia do not warrant a finding that Queljoe suffered sufficiently severe harm to constitute persecution. *See Fisher v. INS*, 79 F.3d 955, 961 (9th Cir.1996) (discrimination by itself gen-

---

* Hon. Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

erally does not constitute persecution); *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998) (general violence does not rise to the level of persecution); *see also Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir.2005). Similarly, she has not shown that subsequent incidents that occurred rose to the level of "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240, 1243 (3d Cir.1993). The IJ found her testimony "general, meager, unquestionable and therefore not sufficiently reliable to establish her claim." App. at 61–62. The court's factual determinations must be upheld if "supported by reasonable, substantial and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (citation and internal quotations omitted). The factual findings of the IJ are conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The record supports the IJ's finding that Queljoe's sole testimony is uncorroborated, inconsistent and general. *See Singh*, 134 F.3d at 967. The inadequacy of Queljoe's testimony precludes a showing of subjective fear. *See Lie*, 396 F.3d at 536. This alone defeats Queljoe's claim of fear of future persecution.

Even if Queljoe had satisfied the subjective prong of the fear of future persecution test, she failed to satisfy the objective prong of the test as she has not shown that she would be singled out and persecuted upon her return to Indonesia. *See id.* at 536. The fact that Queljoe's sister and brother-in-law have never left Indonesia, and that her parents remain in Indonesia following their voluntarily return from the United States, all without incurring any harm, undercut her claim. *See id.* at 537.

Furthermore, Queljoe has failed to show that the Indonesian government implements a pattern or practice of persecution toward Chinese Christians in Indonesia. *See id.* at 536. The IJ noted that the Indonesian constitution protects the major religions of Indonesia, including Christianity. Also, the IJ found the travel warnings irrelevant because Queljoe could not connect the warning to her claim that Chinese Christians are being targeted in Indonesia. In *Lie*, we noted that it appeared the May 1998 riots occurred without the acquiescence of the Indonesian government. *See id.* at 537.

The only other evidence Queljoe offered was the 2004 U.S. Department of State Country Report and the 2004 Religious Freedom Report, which the IJ found inconsistent with Queljoe's claims. Finally, the IJ found that any well-founded fear of persecution that Queljoe had is undermined by Queljoe's delay of almost three years in leaving Indonesia after the 1998 riots and by the fact that Queljoe's family continues to live in Indonesia without harm.

### III.

It follows from our foregoing discussion that Queljoe has failed to meet the standard for asylum. Although the Statement of Questions Presented in Queljoe's appeal brief lists among those questions the issue whether the BIA erred in affirming without opinion the IJ's decision denying withholding of removal pursuant to INA § 241(b)(3)(A) and withholding under CAT, those issues were not fairly presented in Queljoe's appeal brief to the BIA. We are therefore without jurisdiction to consider them.[1]

---

1. We note that these issues are listed in an

undated record document entitled "Respon-

For the reasons set forth, we deny the petition for review.

dents' Reasons for Appeal," apparently presented to the BIA. Even if they were properly before us, they do not provide any basis for us to grant the petition for review. It follows from Queljoe's failure to meet the standard for asylum that she has failed to meet the more stringent standard for relief of withholding of removal. *See Lukwago v. Ashcroft,* 329 F.3d 157, 182 (3d Cir.2003). Moreover, Queljoe has failed to show "it is more likely than not that … she would be tortured if re-

moved" to Indonesia, 8 C.F.R. § 1208.16(c)(2), the standard for a claim for CAT protection. Queljoe's testimony did not refer to government acquiescence relating to an act of torture nor to any torture inflicted in general, and she submitted no evidence on this issue.

